165 N.J. Super. 411 (1979)
398 A.2d 571
EDWARD A. CANTOR AND LEO MASIN, PARTNERS, PLAINTIFFS-RESPONDENTS,
v.
SUNSHINE GREENERY, INC., A NEW JERSEY CORPORATION, DEFENDANT, AND WILLIAM J. BRUNETTI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1979.
Decided January 30, 1979.
*412 Before Judges MICHELS and LARNER.
*413 Mr. Robert A. Bernstein argued the cause for appellant William J. Brunetti (Messrs. Bernstein & Mahoney, attorneys).
Mr. Daniel J. O'Hara, Jr. argued the cause for respondents Edward A. Cantor and Leo Masin (Messrs. Farer & Krueger, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal involves the propriety of a personal judgment against defendant William J. Brunetti for the breach of a lease between plaintiffs and a corporate entity known as Sunshine Greenery, Inc., and more particularly whether there was a de facto corporation in existence at the time of the execution of the lease.
Plaintiffs brought suit for damages for the breach of the lease against Sunshine Greenery, Inc. and Brunetti. Default judgment was entered against the corporation and a nonjury trial was held as to the liability of the individual. The trial judge in a letter opinion determined that plaintiffs were entitled to judgment against Brunetti individually on the theory that as of the time of the creation of the contract he was acting as a promoter and that his corporation, Sunshine Greenery, Inc., was not a legal or de facto corporation.
The undisputed facts reveal the following: Plaintiffs prepared the lease naming Sunshine Greenery, Inc. as the tenant, and it was signed by Brunetti as president of that named entity. Mr. Cantor, acting for plaintiffs, knew that Brunetti was starting a new venture as a newly formed corporation known as Sunshine Greenery, Inc. Although Cantor had considerable experience in ownership and leasing of commercial property to individuals and corporations, he did not request a personal guarantee from Brunetti, nor did he make inquiry as to his financial status or background. Without question, he knew and expected that the lease agreement was undertaken by the corporation and not by Brunetti *414 individually, and that the corporation would be responsible thereunder.
At the time of the signing of the lease on December 16, 1974 in Cantor's office, Brunetti was requested by Cantor to give him a check covering the first month's rent and the security deposit. When Brunetti stated that he was not prepared to do so because he had no checks with him, Cantor furnished a blank check which was filled out for $1,200, with the name of Brunetti's bank and signed by him as president of Sunshine Greenery, Inc. The lease was repudiated by a letter from counsel for Sunshine Greenery, Inc. dated December 17, 1974, which in turn was followed by a response from Cantor to the effect that he would hold the "client" responsible for all losses. The check was not honored because Brunetti stopped payment, and in any event because Sunshine Greenery, Inc. did not have an account in the bank.
The evidence is clear that on November 21, 1974 the corporate name of Sunshine Greenery, Inc. had been reserved for Brunetti by the Secretary of State, and that on December 3, 1974 a certificate of incorporation for that company was signed by Brunetti and Sharyn N. Sansoni as incorporators. The certificate was forwarded by mail to the Secretary of State on that same date with a check for the filing fee, but for some unexplained reason it was not officially filed until December 18, 1974, two days after the execution of the lease.[1]
In view of the late filing, Sunshine Greenery, Inc. was not a de jure corporation on December 16, 1974 when the lease was signed. See N.J.S.A. 14A:2-7(2). Nevertheless, there is ample evidence of the fact that it was a de facto corporation in that there was a bona fide attempt to *415 organize the corporation some time before the consummation of the contract and there was an actual exercise of the corporate powers by the negotiations with plaintiffs and the execution of the contract involved in this litigation. When this is considered in the light of the concession that plaintiffs knew that they were dealing with that corporate entity and not with Brunetti individually, it becomes evident that the de facto status of the corporation suffices to absolve Brunetti from individual liability. Plaintiffs in effect are estopped from attacking the legal existence of the corporation collaterally because of the nonfiling in order to impose liability on the individual when they have admittedly contracted with a corporate entity which had de facto status. See Vanneman v. Young, 52 N.J.L. 403 (E. & A. 1890); Frawley v. Tenafly Transp. Co., 95 N.J.L. 405, 410-411 (E. & A. 1920); Stout v. Zulick, 48 N.J.L. 599 (E. & A. 1886); 18 C.J.S. Corporations § 109 at 505-506, § 111 at 513-514. In fact, their prosecution of the claim against the corporation to default judgment is indicative of their recognition of the corporation as the true obligor and theoretically inconsistent with the assertion of the claim against the individual.
The trial judge's finding that Sunshine Greenery, Inc. was not a de facto corporation is unwarranted under the record facts herein. The mere fact that there were no formal meetings or resolutions or issuance of stock is not determinative of the legal or de facto existence of the corporate entity, particularly under the simplified New Jersey Business Corporation Act of 1969, which eliminates the necessity of a meeting of incorporators. See N.J.S.A. 14A:2-6 and Commissioners' Comment thereunder. The act of executing the certificate of incorporation, the bona fide effort to file it and the dealings with plaintiffs in the name of that corporation fully satisfy the requisite proof of the existence of a de facto corporation. To deny such existence because of a mere technicality caused by administrative delay in filing runs counter to the purpose of the de facto concept, and would *416 accomplish an unjust and inequitable result in favor of plaintiffs contrary to their own contractual expectations.
The trial judges reliance on such cases as K & J Clayton Holding Corp. v. Keuffel & Esser Co., 113 N.J. Super. 50 (Ch. Div. 1971); Asplund v. Marjohn Corp., 66 N.J. Super. 255 (App. Div.), certif. den. 35 N.J. 61 (1961), and Trenton Dressed Poultry, Inc. v. Jamson, Inc., 116 N.J. Super. 327 (App. Div. 1971), is misplaced. Each of these cases is distinguishable on its facts.
K & J Clayton, supra, dealt with an action by a corporation for specific performance of a contract to purchase real estate pursuant to an agreement executed in its name prior to its incorporation. The trial judge held that this subsequently formed corporation was entitled to all the rights under that contract on the theory of adoption of the contract made by the promoter. And by way of dictum, it noted that the promoter could be held liable thereon. There was no effort to form a corporation prior to the contract and the question of a de facto corporation was not involved in any respect.
Asplund, supra, was concerned with a totally different problem relating to the status of a company as a "lending institution" under a contract conditioned upon a mortgage commitment from a "lending institution." Under the particular facts therein, the court found that the company did not qualify as a lending institution, with one of the reasons being that it was not formed as a corporation prior to the transaction, nor had there been any bona fide effort to comply with the filing requirements. Under such facts, it was held that it could not be considered as a de facto corporation with the status of an "institution" under the contract terms.
Trenton Dressed Poultry, supra, similarly presented a set of facts wherein the "record does not support a finding that there ever had been any bona fide attempt to organize a corporation in the manner prescribed by statute." 116 N.J. Super. at 328.
*417 Since the trial judge erred in negating the de facto existence of the corporation herein, the consequent imposition of individual liability on the thesis that Brunetti was a "promoter" is also unwarranted. Since plaintiffs looked to the corporation for liability on the lease, and since we find that Sunshine Greenery, Inc. had a de facto existence, there can be no personal liability of Brunetti on the theory that he was a "promoter." See Fletcher, Cyclopedia of Corporations, § 215.
In view of the foregoing, the judgment entered against defendant William J. Brunetti is reversed and set aside, and the matter is remanded to the Law Division to enter judgment on the complaint in favor of William J. Brunetti.
NOTES
[1] We note that the letter enclosing the certificate of incorporation is addressed to "Mortimer G. Newman, Jr., Secretary of State, State House Annex, Trenton, New Jersey." Whether this misidentification of the person holding the office of Secretary of State accounts for the filing delay we are unable to say from the record.